UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA ex rel. DR. SET SHAHBABIAN,

      Plaintiff,

v.

TRIHEALTH, INC., et al.,

      Defendants.

Case No. 1:20-cv-67

JUDGE DOUGLAS R. COLE

**OPINION AND ORDER**

Relator Dr. Set Shahbabian purports to bring this False Claims Act (FCA) suit on behalf of the United States against TriHealth, Inc. (TriHealth), Good Samaritan Hospital of Cincinnati, Ohio (Good Samaritan), Bethesda Hospital, Inc. (Bethesda North) (the Court will refer to those two hospitals together as TriHealth Hospitals), and the Mayfield Clinic, Inc. (Mayfield). Importantly, about ten months before Shahbabian brought suit, another relator, Timothy Murphy, also sued TriHealth Hospitals, along with TriHealth G, LLC, d/b/a TriHealth Physician Partners (TriHealth Physicians), on behalf of the United States under the FCA, in a strikingly similar action. (*See* Compl., *United States ex rel. Murphy v. TriHealth, Inc., et al.*, No. 1:19-cv-168 (S.D. Ohio Mar. 4, 2019), Doc. 1).

Defendants moved to dismiss the present action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Mayfield 12(b)(1) Mot., Doc. 38; Mayfield 12(b)(6) Mot., Doc. 40; TriHealth 12(b)(6) Mot., Doc. 42; TriHealth 12(b)(1) Mot., Doc. 45). And TriHealth, TriHealth Hospitals, and TriHealth Physicians likewise moved to dismiss

in *Murphy* on the same grounds. (*Murphy*, No. 1:19-cv-168, Docs. 64, 66). In both cases, the respective defendants assert that the FCA violates Article II's Appointments and Take Care Clauses, and that relators lack Article III standing. In this case, Defendants further argue that the *Murphy* action also bars Shahbabian's suit under the FCA's first-to-file rule. Given the overlap between the two cases, the Court has held in abeyance its rulings to allow for complete briefing in both cases. (2/24/25 Not. Ord., *Murphy*, 1:19-cv-168).

Now, for the reasons more fully set forth below, the Court **DENIES** Defendants' Rule 12(b)(1) motions (Docs. 38, 45) as to Shahbabian's Article III standing and the FCA's constitutionality under Article II. As the Court also explained in *Murphy*, recent Supreme Court precedent dooms the first argument, and long-settled Sixth Circuit precedent dooms the second. That said, as it did in *Murphy*, the Court **CERTIFIES** this Order for interlocutory appeal under 28 U.S.C. § 1292(b). That is because recent developments in Supreme Court caselaw could cause reasonable jurists to disagree with the Court's resolution, at least on the Article II question. And given that a different outcome on that issue would be dispositive, coupled with the extensive discovery that an FCA action like this one will entail (discovery that would be pointless if relators are constitutionally defective), the Court concludes that the parties, and the judicial system, are better served by resolving that issue now rather than later. Further, because the Court has already, in *Murphy*, certified the same constitutional question that would be controlling here, the Court **STAYS** this case until that appeals process is complete. As a result, the Court

**HOLDS IN ABEYANCE** any further consideration of the first-to-file rule and the defenses raised in Defendants' Rule 12(b)(6) motions.

## BACKGROUND[1]

TriHealth is a corporate partnership between two hospitals, Good Samaritan and Bethesda North. (Am. Compl. Doc. 9, #1065). Mayfield is an independent neurosurgery physicians' group. (*Id.* at #1066).

Shahbabian, a neurosurgeon, began conducting neurosurgeries at Good Samaritan in the late 1960s. (*See id.* at #1065, 1082). By 2014, Shahbabian averaged 400 to 600 surgeries per year at the hospital. (*Id.* at #1082). At that time, TriHealth hired Shahbabian as an employee and purchased his medical practice's assets. (*Id.* at #1082–83).

Shortly after securing the purchase agreement with Shahbabian, TriHealth formalized an agreement with Mayfield. (*Id.* at #1083–84). Shahbabian alleges that this agreement formed the basis of an illegal kickback scheme where Mayfield redirected University of Cincinnati Health patients to Good Samaritan and Bethesda North and TriHealth redirected Shahbabian's patients to Mayfield. (*Id.* at #1125–26). Shahbabian also alleges that TriHealth violated the Stark Act when it entered into

---

[1] Because this matter comes before the Court on various motions to dismiss under Rule 12(b)(6) and Rule 12(b)(1) (specifically, a facial attack to subject-matter jurisdiction), the Court must accept the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But the Court reminds the reader that they are just that—allegations. And because this Opinion and Order only reaches the constitutional issues, the Court keeps its factual recitation brief.

illegal referral-based compensation agreements with Mayfield physicians. (*Id.* at #1128).

After consummating the agreements with Mayfield and its physicians, TriHealth forced Shahbabian out. (*See id.* at #1121). It informed Shahbabian that it would not renew his contract. (*Id.*). And TriHealth then compelled Shahbabian to resign his surgery privileges under threat of reporting quality of care issues to the Ohio State Medical Board. (*Id.*). To top it off, TriHealth transferred Shahbabian's patients to Mayfield physicians. (*Id.*).

Shahbabian responded by suing TriHealth, TriHealth Hospitals, and Mayfield for age discrimination. *Shahbabian v. TriHealth Inc.*, No. 21-3762, 2023 WL 2424603, at *1 (6th Cir. Mar. 9, 2023).[2] After engaging in discovery, Shahbabian brought this qui tam action against Defendants on behalf of the United States. (*See* Doc. 9, #1089 n.2). Shahbabian claims that Defendants violated the FCA when Defendants presented claims for reimbursement to federally funded health insurance programs that falsely certified compliance with the Anti-Kickback Statute (AKS) and the Stark Act. (*Id.* at #1136–40).

Shahbabian filed this action on January 27, 2020. Roughly ten months earlier, Murphy, TriHealth's former Physician Practices Chief Financial Officer, initiated a separate FCA qui tam action against TriHealth, TriHealth Hospitals, and TriHealth Physicians based on AKS and Stark Act violations. (*See Murphy*, No. 1:19-cv-168,

---

[2] That case is no longer pending. The Sixth Circuit affirmed the district court's grant of summary judgment to the defendants for all counts and to TriHealth for its breach-of-contract counterclaim against Shahbabian. *Shahbabian*, 2023 WL 2424603, at *1.

4

Doc. 1). There, Murphy claims that TriHealth and TriHealth Hospitals engaged in similar referral compensation schemes across their health system. (Sec. Am. Compl. *Murphy*, No. 1:19-cv-168, Doc. 50, #554). At least at the time that Shahbabian filed his qui tam action, Murphy made allegations about the scheme between TriHealth, TriHealth Hospitals, and Mayfield. (Compl., *Murphy*, No. 1:19-cv-168, Doc. 1, #9–13; First Am. Compl., *Murphy*, No. 1:19-cv-168, Doc. 12, #292–301; *but see* Sec. Am. Compl., *Murphy*, No. 1:19-cv-168, Doc. 50).

Shahbabian and Murphy filed their complaints under seal as the FCA requires. In 2024, the United States declined to intervene in either case. (Doc. 17; *Murphy*, 1:19-cv-168, Doc. 23). Subsequently, the Court ordered the operative complaints unsealed and served on the appropriate defendants. (Doc. 18; *Murphy*, 1:19-cv-168, Doc. 24).

In this case, TriHealth, TriHealth Hospitals, and Mayfield moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (along with 9(b)). (Docs. 38, 40, 42, 45). In support of their Rule 12(b)(1) motions, Defendants argue two things. First, they say the FCA is unconstitutional under Article II, and, as a result, Shahbabian lacks Article III standing. (Mayfield 12(b)(1) Mem., Doc. 39; TriHealth 12(b)(1) Mem., Doc. 46). Second, Defendants claim that the FCA first-to-file rule bars the suit. (*Id.*). Shahbabian responded separately as to each issue. (Constitutional Resp., Doc. 55; First-to-File Resp., Doc. 56; 12(b)(6) Resp., Doc. 57). The United States then intervened solely to oppose the constitutional challenge. (Doc. 60). Defendants

5

replied jointly, but filed one joint brief as to each of the two issues. (Constitutional Reply, Doc. 62; 12(b)(6) Reply, Doc. 64; First-to-File Reply, Doc. 65).

In *Murphy*, TriHealth, TriHealth Hospitals, and TriHealth Physicians moved to dismiss under Rules 12(b)(1) and 12(b)(6). (*Murphy*, 1:19-cv-168, Docs. 64, 66). Their Rule 12(b)(1) motion raises the same constitutional issues as in this case. (*See* 12(b)(1) Mem., *Murphy*, 1:19-cv-168, Doc. 65). Murphy moved for joint determination of related issues with this case, which the Court granted in part. (2/24/25 Not. Ord., *Murphy*, 1:19-cv-168). Briefing is now complete in both cases.

## LAW AND ANALYSIS

Defendants press constitutional arguments under both (1) Article II's Take Care and Appointments Clauses and (2) Article III's standing requirements. And they further claim that both types of arguments go to this Court's subject-matter jurisdiction. But that is not so. According to the Supreme Court "the validity of *qui tam* suits under those [Article II] provisions [is not] a jurisdictional issue." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778 n.8 (2000). Defendants also contend that the FCA's first-to-file rule bars Shahbabian's suit because Murphy filed first. Similarly, "the first-to-file rule is not a jurisdictional limitation." *United States ex rel. Bryant v. Cmty. Health Sys., Inc.*, 24 F.4th 1024, 1036 (6th Cir. 2022). As a result, Defendants likely should have raised their Article II challenge and the first-to-file rule under Rule 12(b)(6) rather than Rule 12(b)(1). That said, the Court will look past the mislabeling and "proceed to address whether

6

[Defendants'] allegations state a claim." *See Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010).

That raises another wrinkle: "Courts should avoid unnecessary constitutional questions." *United States v. Elkins*, 300 F.3d 638, 647 (6th Cir. 2002). That would seem to call for the Court to decide all other issues relating to the validity of Shahbabian's action before it turns to the Article II question. Indeed, that's the approach the Court took, for example, in *Murphy*.

But the Court concludes that a different approach is warranted here given that it cannot truly avoid the Article II question for at least two reasons. First, as a practical matter, the Court already reached that issue in the companion case—*Murphy*. That is, while the Court informally consolidated *Murphy* and *Shahbabian* for purposes of rendering a simultaneous decision on the various pending motions in each, the Court began its analysis of the two with *Murphy*. And there, the Court determined that it could not avoid the Article II question (because standing posed no issue and Murphy had plausibly alleged his claims).

And the Court's determination in *Murphy* provides a second, related reason why the Court likewise must reach the constitutional question here. More specifically, the Court's resolution of the Article II question in *Murphy* interweaves with the first-to-file issue here, which, in turn, interweaves with the other Rule 12(b)(6) and Rule 9(b) issues that Defendants raise. That is because, if the *Murphy* complaint is "legally infirm from its inception," as Defendants in that action claim it is on Article II grounds, then the *Murphy* action cannot preempt a later action under

7

the first-to-file rule. *See Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005). In other words, the Court's resolution of the first-to-file issue here would necessarily entail consideration of the Article II question, at least indirectly (as the Court would need to decide if the *Murphy* action is "legally infirm" on Article II grounds). And beyond that, courts apply the first-to-file rule by comparing the allegations in the relevant complaints on a claim-by-claim basis. *United States v. Univ. of TN Med. Ctr. Home Care Servs., LLC*, No. 3:17-cv-96, 2021 WL 3743189, at *10 (E.D. Tenn. Aug. 23, 2021); *see also United States ex rel. LaCorte v. SmithKline Beecham Clinical Lab'ys, Inc.*, 149 F.3d 227, 232–33 (3d Cir. 1998). So, the Court must resolve the first-to-file issue to determine what remains at issue in this case for Defendants' other Rule 12(b)(6) and Rule 9(b) arguments.

Accordingly, the Court here starts with the Article III standing challenge, which does go to subject-matter jurisdiction. As a preview, the Court concludes that Relator has standing, just as it did in *Murphy*. With that threshold matter resolved, the Court then addresses the Article II issue and, although the Court finds that the qui tam provisions do not violate Article II, it nonetheless certifies the order for interlocutory appeal. And given the Court's certification for such appeal, the Court declines at this time to reach the first-to-file issue or Defendants' other Rule 12(b)(6) and Rule 9(b) arguments.

A.  **Relators Have Article III Standing.**

Article III limits courts to deciding "Cases" and "Controversies." The Supreme Court has long held that, to fall within those categories, a plaintiff must establish

8

that he has standing to sue. Here, Defendants claim that Shahbabian lacks standing. But that argument largely turns on their claim that his role as the relator in this action violates Article II's Appointments and Take Care Clauses. So, it is those latter Article II arguments that ultimately matter here. But that is a problem for Defendants because, as described below, Supreme Court precedent squarely forecloses reliance on the Article II argument as a standing argument.

No one disputes that, to have standing to sue, a party must satisfy three elements: an injury in fact, causation, and redressability. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Shahbabian does not argue that any personal injury he has suffered allows him to pursue the overbilling claims.

But that doesn't ruin his chances. The FCA creates civil liability for presenting false claims to the United States for payment. *Stevens*, 529 U.S. at 768–69 (citing 31 U.S.C. § 3729(a)). The statute further provides that the United States need not itself initiate the action against the alleged false claimant. Rather, "a private person (the relator) may bring a *qui tam* civil action 'for the person and for the United States Government' against the alleged false claimant, 'in the name of the Government.'" *Id.* (quoting 31 U.S.C. § 3730(b)(1)). And if the action is successful, the relator is entitled to a portion of the recovery. *Id.* at 769–70. Based on that framework, the Supreme Court has expressly held that an FCA relator meets Article III standing requirements through "partial assignment of the Government's damages claim." *Id.* at 773–74.

Not so fast, Defendants say. They argue that the FCA's qui tam provisions violate Article II of the Constitution. And, because relators lack proper authorization

9

under Article II, relators cannot pursue the suit, in turn again meaning that they lack standing under Article III (as they do not have the requisite personal interest in the suit). (Doc. 39, #1867–68; Doc. 46, #1975).

The problem for Defendants is that *Stevens* squarely forecloses this argument. In *Stevens*, while "express[ing] no view on the question whether *qui tam* suits violate Article II," the Court found "no room for doubt that a *qui tam* relator under the FCA has Article III standing." *Stevens*, 529 U.S. 765 at 778, 778 n.8. The Supreme Court's more recent decision in *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262 (2019), further confirms that result. While the Supreme Court did not mention standing, it cited *Stevens* (thereby suggesting that *Stevens* remains good law). And, more importantly, the Court proceeded to judgment in an intervention-declined FCA action. *See* 587 U.S. at 267, 272. The Supreme Court of course "bear[s] an independent obligation to assure [itself] that jurisdiction is proper before proceeding to the merits." *Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 324 (2008). So presumably that means the Court concluded that the relator in *Cochise* had standing, just like *Stevens* says.

Defendants assert that the Supreme Court "implicitly overruled" *Stevens* in *United States ex rel. Polansky v. Executive Health Resources*, 599 U.S. 419 (2023). (Doc. 62, #2324). According to Defendants, "in *Polansky,* the Court made very clear that there is only one 'real party in interest' in a *qui tam* action, and that is the government." (*Id.* (citing *Stevens*, 599 U.S. 419 at 425)). But the Court is not convinced. *Polansky* actually identifies the government as "*a* real party in interest,"

10

using the indefinite article. *Polansky*, 599 U.S. 419 at 425 (emphasis added) (quotation omitted); *see Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("[C]onsistent use of the *definite* article indicates that there is generally only one." (emphasis added)).

Beyond that, Defendants argue that *Polansky* undermines *Stevens*' holding that a relator's standing arises from assignment of the government's injury. For proof, they point to language in *Polansky* stating that "the injury [FCA relators] assert is exclusively to the Government." (Doc. 39, #1830 (quoting *Polansky*, 599 U.S. at 425)). But *Polansky*, immediately after the language Defendants quote, specifically endorses the basis for the *Stevens* holding: "The FCA, we have explained, 'effect[s] a partial assignment of the Government's' own damages claim." *Polansky*, 599 U.S. at 425 (quoting *Stevens*, 529 U.S. at 773). "[A] *qui tam* suit is, as the statute puts it, 'for' both the relator and the Government." *Id.* (quoting 31 § 3730(b)(1)). So whatever it may have to say about identity of the injured party, *Polansky* does not seem to change *Stevens*' holding that relators have Article III standing.

Defendants remaining standing arguments contend that *Stevens* is "incorrect." (Doc. 46, #1975). That may be. But their disagreement with Supreme Court precedent does not provide a basis for this Court to ignore it. Even if *Stevens* "appears to rest on reasons rejected in some other line of decisions, [lower courts] should follow the case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484

11

(1989). Unless and until overruled, *Stevens* dictates that, as a qui tam relator, Shahbabian has Article III standing to bring this action.

**B.     The FCA's Constitutionality Under Article II.**

With the jurisdictional issue out of the way, the Court turns to the heart of Defendants' argument—that the FCA's qui tam provisions violate two parts of Article II: the § 2 Appointments Clause and § 3 Take Care Clause.[3] As to the former, the Constitution requires that either the President, a department head, or the courts, must appoint anyone who is an "officer" of the United States. U.S. Const. art. II § 2. Defendants argue that FCA relators are improperly appointed officers because they essentially appoint themselves. As for the latter, the Take Care Clause requires that the President "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. And on this front, Defendants contend that the FCA interferes with the President's duties by vesting relators with the power to enforce the law without sufficient executive oversight.[4]

---

[3] As noted above, *Stevens* separates the Article II question from Article III standing. Thus, the question's resolution does not affect the Court's jurisdiction. *Stevens*, 529 U.S. at 778 n.8. That said, because Defendants' Rule 12(b)(1) motion mounts a facial attack to jurisdiction, the Court employs a standard of review similar to the one courts apply to motions brought under Rule 12(b)(6). So if the FCA's qui tam provisions violate Article II, Murphy fails to state a claim under Rule 12(b)(6) because no law supports the claims made. *See Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 967 F. Supp. 2d 1164, 1169 (S.D. Ohio 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)).

[4] As Defendants point out, the Vesting Clause vests the executive power in the President. U.S. Const. art. II, § 1. Defendants argue that if the FCA vests a relator with executive power in a manner that violates the Appointments Clause, the FCA also violates the Vesting Clause. (*See* Doc. 46, #1964–67). The Appointments Clause issue's resolution answers the Vesting Clause question.

12

Once again, whatever the Court may think of these constitutional arguments as a matter of first impression, binding caselaw dooms them. The Sixth Circuit has specifically held in a reported decision that the FCA's relator provisions do not violate either the Appointments Clause or the Take Care Clause. *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994). According to *Taxpayers*, a "relator is not an 'officer' within the meaning of the Appointments Clause." *Id.* Therefore, the Appointments Clause's provisions simply do not apply. *Id.* And in that same decision, the Sixth Circuit held that the qui tam provisions likewise do not violate the Take Care Clause because "the Executive Branch retains 'sufficient control' over the relator's conduct to 'ensure that the President is able to perform his constitutionally assigned dut[y.]'" *Id.* (quoting *Morrison v. Olson*, 487 U.S. 654, 696 (1988)).

As a published Sixth Circuit decision, *Taxpayers* binds this Court. *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009). "Of course, if the Court of Appeals is directly reversed by the Supreme Court, or if the facts of the Supreme Court's decision are indistinguishable from those presented to the Court of Appeals, this Court has a clear obligation to follow the Supreme Court." *In re Higgins*, 159 B.R. 212, 215–16 (S.D. Ohio 1993). But "a District Court should be extremely careful in concluding that circuit precedent is no longer good law." *Id.* A district court "should only deviate from such authority where it is powerfully convinced that the circuit will overrule itself at the next available opportunity." *Hollis v. Erdos*, 480 F. Supp. 3d 823, 832 (S.D. Ohio 2020) (quotation omitted); *see also Colby v. J.C. Penney Co.*, 811

13

F.2d 1119, 1123 (7th Cir. 1987) ("We are bound to follow a decision of the Supreme Court unless we are powerfully convinced that the Court would overrule it as the first opportunity.").

Defendants urge a different result. Reminiscent of their standing argument, they assert that in *Polansky* the Supreme Court "effectively overruled" the Sixth Circuit's *Taxpayers* Take Care Clause holding.[5] (Doc. 62, #2322–23). That is because, under *Polansky*, the government must intervene before dismissing a qui tam action. *Polansky*, 599 U.S. at 430. In Defendants' view, this requirement reduces the Executive Branch's control over the action because the government may not intervene late without good cause. And because the *Taxpayers* holding rested on "the government retain[ing] the ability to dismiss," Defendants say that holding cannot survive *Polansky*. (Doc. 62, #2322–23).

The Court sees some merit in Defendants' position, but is not "powerfully convinced," *Hollis*, 480 F. Supp. 3d at 832, that the argument will cause the Sixth Circuit to abandon *Taxpayers*. The decision in *Taxpayers* did not necessarily hinge on the government's ability to dismiss without intervention. To start, the decision did not even specify whether intervention was required before dismissal, suggesting the court was not relying on that characteristic. And in any event, *Taxpayers* lists the government's ability to dismiss as just one of several provisions that "maintain the primacy of the Executive Branch in prosecuting false-claims actions":

> Indeed, if the government decides against intervening in the relator's case, it may still require the relator to inform it of developments and to

---

[5] Defendants do not explain why *Taxpayers* would not preclude their Appointments Clause argument. (*See* Doc. 39, #1866–67; Doc. 62, #2322–23).

14

> forward copies of the claims, the material evidence and information, and copies of depositions taken. In fact, after turning down the opportunity to intervene, the government may still intervene later upon a showing of good cause. Similarly, the government may move to have the relator's litigation role significantly restricted, even as it may conduct settlement talks or even decide that the case should be dismissed. Nor will the relator's initial filing of a claim in federal court alert the defendants and trigger an evasive mechanism, because the statute clearly requires the relator's filings to be sealed for at least sixty days, and for much longer if the government can show the need, as was the case in this litigation.

41 F.3d at 1041. So further qualifications on the government's ability to dismiss (even assuming that an intervention requirement is an additional requirement), may not change the Sixth Circuit's view that the government retains sufficient control for Article II purposes.

Further pointing in that same direction, far from overruling the Sixth Circuit, *Polansky* resolved a circuit split in the Sixth Circuit's favor. *See Polansky v. Exec. Health Res. Inc.*, 17 F.4th 376, 384 n.8 (3d Cir. 2021) (citing *United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 519–20 (6th Cir. 2009), *abrogated on other grounds by United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813 (6th Cir. 2021)); *Polansky*, 599 U.S. at 428–29. That is, before *Polansky*, Sixth Circuit precedent already required the government to intervene before dismissing. *Poteet*, 552 F.3d at 519–20. True, *Poteet* came after *Taxpayers*. But *Taxpayers*, as a reported decision, also bound the *Poteet* panel. *See Rutherford*, 575 F.3d at 619. So the Court does not read the decisions to conflict, in turn suggesting that, at least in the Sixth Circuit, the government was required to intervene to secure dismissal when the court decided *Taxpayers*.

In any event, if as Defendants suggest, the *Taxpayers* understanding of Article II does not survive *Polansky*, the Sixth Circuit will no doubt say so. But that is a question for the Sixth Circuit, not this Court. And under *Taxpayers*, the FCA's qui tam provisions do not violate the Take Care Clause or the Appointments Clause.

## C.  Certification for Interlocutory Appeal.

Separately, Defendants request that the Court permit an interlocutory appeal if it determines that *Taxpayers* is binding. (Doc. 62, #2323 n.2). The Court may certify an order for interlocutory appeal if the Court is "of the opinion" that the order hinges on (1) "a controlling question of law," (2) with "substantial ground for difference of opinion," such that (3) immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). For purposes of § 1292(b), "[a] legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002). And "[a] substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017) (quoting *Rees v. BP Exploration, Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)). Applying that framework, the Court concludes that this Order satisfies these prerequisites, at least as to the Article II questions.[6]

---

[6] The Order does not meet the § 1292(b) prerequisites as to the Article III standing question because the Supreme Court unequivocally answered that question in *Stevens*. 529 U.S. 765 at 778. That said, certification under § 1292(b) "applies to the *order* certified." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996). Accordingly, "even those issues not properly certified are subject to [the Sixth Circuit's] discretionary power of review if otherwise necessary to the disposition of the case." *Pinney Dock & Transp. Co. v. Penn. Cent. Corp.*, 838 F.2d 1445, 1455 (6th Cir. 1988).

16

The Article II questions are certainly controlling. If the FCA's qui tam provisions are unconstitutional, this case presumably cannot proceed (at least absent governmental intervention, which the government has declined).[7] And that same logic shows why immediate appeal "may materially advance the ultimate termination of the litigation." *United States ex rel. White v. Mobile Care EMS & Transp., Inc.*, No. 1:15-CV-555, 2021 WL 6064363, at *18 (S.D. Ohio Dec. 21, 2021) (quotation omitted). That is especially true given the nature of this case. FCA actions typically involve extensive discovery, and usually require a substantial investment of both party and judicial resources, all of which would be for naught if the suit is invalid. *See W. Tenn. Chapter of Assoc. Builders & Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1026 (immediate appeal may materially advance the litigation if it might "save substantial judicial resources and litigant expense"). So, the first and third elements are met.

That leaves the second element—whether there is a substantial ground for a difference of opinion. The Court concludes there is. As noted, this Court must follow *Taxpayers* until the Sixth Circuit or Supreme Court say otherwise. But reasonable jurists could disagree as to whether the FCA violates Article II and as to whether *Polansky* tacitly overrules *Taxpayers*. Indeed, a district court recently held the FCA unconstitutional under Article II, pointing to recent developments in Supreme Court precedent involving the Appointments Clause. *United States ex rel. Zafirov v. Fla.*

---

[7] The Court expresses no view on whether, if the Sixth Circuit were to conclude the relator is an invalidly appointed "officer," the government could somehow "save" the suit by electing to intervene at that time.

17

*Med. Assocs., LLC*, 751 F. Supp. 3d 1293, 1310 (M.D. Fla. 2024) (relying on Supreme Court precedent that "has only solidified the strictures of the Appointments Clause" after *Taxpayers*). An appeal in that matter is pending before the Eleventh Circuit, which has not answered the Article II question. Notice of Appeal, *United States ex rel. Zafirov*, No. 24-13581, (11th Cir. Oct. 30, 2024). Further, in *Stevens*, the Supreme Court's latest express pronouncement on such issues in the FCA context (albeit some twenty-five years ago), that Court expressly reserved the Article II issue. 529 U.S. at 778 n.8 ("[W]e express no view on the question whether *qui tam* suits violate Article II, in particular the Appointments Clause of § 2 and the 'take Care' Clause of § 3."). And, more recently, three Justices have noted that the FCA's qui tam provisions "raise substantial constitutional questions under Article II" that the Supreme Court should consider "in an appropriate case." *Wisconsin Bell, Inc. v. United States ex rel. Heath*, 604 U.S. \_\_,145 S. Ct. 498, 515 (2025) (Kavanaugh, J., concurring, joined by Thomas, J.); *Polansky*, 599 U.S. at 442 (Kavanaugh, J., concurring, joined by Barrett, J.); *Polansky*, 599 U.S. at 449 (Thomas, J., dissenting).

As all three of § 1292(b)'s elements are present, the Court certifies this Order for interlocutory appeal. Accordingly, any party may apply for an appeal to the Sixth Circuit within ten days after this Order's entry. 28 U.S.C. § 1292(b). Moreover, the Court stays further proceedings in this action until resolution of the interlocutory appeal process. For clarity, the Court notes that it has reached the same determination in *Murphy* and that the Sixth Circuit may wish to consolidate any appeals.

18

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Rule 12(b)(1) motions to dismiss (Docs. 38, 45) as to Shahbabian's Article III standing and as to the FCA's constitutionality under Article II. But the Court hereby **CERTIFIES** that this Order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b).

This Order **STAYS** this case until the latest of: (1) expiration of the interlocutory appeal application window, (2) denial of the interlocutory appeal application, or (3) resolution of the interlocutory appeal. The Court **HOLDS IN ABEYANCE** its rulings on the first-to-file rule and the issues raised in Defendants' Rule 12(b)(6) motions (Docs. 40, 42) until the stay terminates.

**SO ORDERED.**

July 28, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**